IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
_____

ADVOCARE INTERNATIONAL L.P.,              *
                                          *
            Plaintiff,                    *
                                          *
v.                                        *       Civil No. 3:04-CV-1988-H
                                          *
HORIZON LABORATORIES, INC.,               *
RICHARD PAUL SCHECKENBACH                 *
R-SQUARED NUTRITION, INC., and            *
HERBASIA CORPORATION,                     *
                                          *
            Defendants.                   *

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant HerbAsia Corporation's Second Motion to Dismiss, filed June 17, 2005; and Plaintiff's Response, filed June 24, 2005.[1]  For the following reasons Defendant's Motion is **DENIED**.

## I.    Background[2]

Defendant Horizon Laboratories, Inc. ("Horizon"), is one of Plaintiff's manufacturers.  (Mem. Op. and Order, entered Aug. 2, 2005, at 2.)  Horizon received its raw materials from, *inter alia*, HerbAsia Corporation ("HerbAsia").  (*Id.*; Pl.'s 1st Am. Compl. at 6, 7, 11; Pl.'s App. at 3.) From 2001 through 2004, Richard Scheckenbach ("Scheckenbach"), along with

_____

[1]  The parties have previously submitted argument on the issue of personal jurisdiction over HerbAsia Corporation.  (*See* HerbAsia Corp.'s  Mot. to Dismiss, filed Mar. 23, 2005; Pl.'s Combined Mot. to Extend Time for Resp., Mot. for Discovery, and Resp., filed April 11, 2005; Def.'s Reply, filed April 27, 2005.)  The Court considers these filings in ruling on the instant Motion.  Additionally, the Court considers the entire record as applicable.

[2]  The background relating to this case is outlined in more depth in the Court's Memorandum Opinion and Order, entered August 2, 2005.  For convenience and economy, the Court refers to that background here, as applicable.

his wife, were the sole owners and directors of HerbAsia.[3]  (Pl.'s 1st Am. Compl. at 7; Pl.'s App. 2A at 9.)

Plaintiff's original state court action did not name HerbAsia as a defendant.  (Def. Horizon's Notice of Removal at 1.)  After Horizon removed on diversity grounds, Plaintiff filed its First Amended Complaint adding HerbAsia. (Pl.'s 1st Am. Compl., filed Jan. 11, 2005.)  With leave of the Court, Plaintiff then filed its Second Amended Complaint to cure pleading defects and allege alternate theories of liability against HerbAsia.[4]  Arguing that a jurisdiction defect still exists, HerbAsia filed the instant motion on June 17, 2005.

## II.    Standard of Review

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the applicable law of the forum state." *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing FED.R.CIV.P. 4(e)(1), (h)(1), and (k)(1)).  In Texas, the exercise of personal jurisdiction over a nonresident defendant is proper where: 1) the defendant has committed an act that confers jurisdiction under the Texas long-arm statute; and 2) the exercise of jurisdiction under that statute does not deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *Delgado v. Reef Resort Ltd.*, 364 F.3d 642,

---

[3]  In April 2004, prior to the instant suit, Scheckenbach sold HerbAsia to Tai Brown and his wife. (Def.'s App. at 4.)

[4]  Plaintiff alleges that between October 2001 and July 2003,  Scheckenbach breached fiduciary duties owed to Plaintiff, and defrauded Plaintiff.  (Pl.'s 2nd Am. Compl. at 10-11.)  Plaintiff alleges that as a party to Scheckenbach's fraud and breach of fiduciary duty, HerbAsia is liable as a joint tort feasor. (Pl.'s 2d Am. Compl. at 12.)  Texas law recognizes joint tort feasor liability as pleaded by Plaintiff. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942); *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App.–Austin 2001) (fiduciary duty joint tort feasor); *Kline v. O'Quinn*, 874 S.W.2d 776 786 (Tex. App.–Houston [14 Dist.] 1994) (fraud joint tort feasor).

645 (5th Cir. 2004), *cert. denied*, --- U.S. ---, 125 S. Ct. 623 (Nov. 29, 2004); *Cent. Freight Lines*, 322 F.3d at 380.

The Texas long-arm statute provides, *inter alia*, that a nonresident does business in Texas if the nonresident commits a tort in whole or in part in Texas.  TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (Vernon Supp. 2004).  Because courts have interpreted the Texas long-arm statute to extend to the limits of due process, *see Cent. Freight Lines*, 322 F.3d at 380, the sole inquiry is whether the assertion of personal jurisdiction over a defendant comports with federal constitutional requirements.  *Id.*; *Aviles v. Kunkle,* 978 F.2d 201, 204 (5th Cir. 1992).  Obtaining personal jurisdiction over a nonresident comports with constitutional requirements if (1) the nonresident purposefully availed himself of the benefits and protections of Texas law by establishing minimum contacts with Texas such that he could reasonably anticipate being haled into court in Texas, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Cent. Freight Lines*, 322 F.3d at 380; *TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F. Supp. 2d 561, 565 (N.D. Tex. 2001).

Minimum contacts with a forum state "can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Cent. Freight Lines*, 322 F.3d at 381 (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945))).  General jurisdiction exists when a nonresident defendant has engaged in continuous and systematic contacts with the forum state.  *Id*. Specific jurisdiction exists if the plaintiff can establish that "defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. (citing *Burger King*, 471 U.S. at 472).

3

"When . . . the district court [does] not conduct an evidentiary hearing on defendant's motion to dismiss, the party seeking to assert jurisdiction is required only to present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Cent. Freight Lines*, 322 F.3d at 380 (citing *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000)); *TIG Ins. Co.*, 177 F. Supp. 2d at 565. In determining whether a *prima facie* case for personal jurisdiction exists, the Court accepts as true only non-conclusory uncontroverted allegations "and resolve[s] all factual conflicts in favor of the party seeking to invoke the court's jurisdiction." *Cent. Freight Lines*, 322 F.3d at 380; *Bullion v. Gillespie,* 895 F.2d 213, 215 (5th Cir. 1990).

## III.    Analysis

In the instant diversity action, an evidentiary hearing has not been conducted. Therefore, the Court determines whether Plaintiff has met its *prima facie* burden. Plaintiff's *prima facie* burden is to show whether HerbAsia established minimum contacts with Texas such that it could reasonably anticipate being haled into Texas courts and whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice.

### A.    Minimum Contacts

#### 1.    General Jurisdiction

The continuous and systematic contacts test required for general jurisdiction is a difficult standard to satisfy. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (citing 16 James Wm. Moore et. al., *Moore's Federal Practice* ¶ 108.41[3] (3d ed.1999)); *see, e.g., Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 Fed. Appx. 376, 382 (5th Cir. 2004); *Cent. Freight Lines*, 322 F.3d at 381 (no general jurisdiction even though defendant "routinely arranges and receives interline shipments to and from Texas and apparently sends sales

people to the state on a regular basis to develop business, negotiate contracts, and service national accounts"); *Wilson v. Belin*, 20 F.3d 644, 650-51 (5th Cir. 1994) (even if possibly continuous, defendant's contacts were not substantial enough for general personal jurisdiction). General jurisdiction requires that HerbAsia engage in extensive contacts with the forum. *See Submersible Sys.*, 249 F.3d at 419; *Brokerwood Int'l*, 104 Fed. Appx. at 382. "[T]he general jurisdictional inquiry focuses exclusively on whether the nonresident defendant's contacts with the forum unrelated to the cause of action are sufficiently 'continuous and systemic' to satisfy due process requirements." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 417 (1984)); *see Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) ("General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'")

Nothing in Plaintiff's pleadings present sufficient facts to make out a *prima facie* case supporting general jurisdiction. There is no allegation that Herbasia conducts regular business or makes any business decisions in Texas, substantial or otherwise. Plaintiff has not shown any general contacts unrelated to the cause of action. Indeed, Plaintiff posits that all Scheckenbach's, *i.e.*, HerbAsia's contacts are related to the cause of action.[5] (Pl.'s Resp. at 3-4.) Scheckenbach's eight business trips to Texas are not "continuous and systematic" required for general personal jurisdiction to attach.

---

[5] Although Plaintiff argues that HerbAsia is Scheckenbach's alter ego and therefore Scheckenbach's trips to Texas should be imputed to HerbAsia, Plaintiff has not demonstrated that those contacts are unrelated to the cause of action.

### 2.      Specific Jurisdiction

Specific jurisdiction may exist where the cause of action is predicated on or directly related to defendant's contacts with the forum.  *Freudensprung*, 379 F.3d at 343 ("A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state.") (citing *Helicopteros*, 466 U.S. 408); *Revell*, 317 F.3d at 470.  The Court determines whether the quality, not merely the quantity, of the contacts "suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state."  *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983).  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person."  *Burger King Corp.*, 471 U.S. at 475 (citations omitted).

In the context of intentional torts, the Fifth Circuit's standard for minimum contacts is less stringent than its standard for general jurisdiction.  *See Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001).  "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."  *Id*.; *Wien Air Alaska*, 195 F.3d at 213; *Brown*, 688 F.2d at 332-33 (one contact, a single tort, sufficient under the due process clause to subject the defendants to *in personam* jurisdiction).  Plaintiff complains of various acts of HerbAsia as joint tort-feasor in Scheckenbach's scheme to defraud Plaintiff and breach his fiduciary duties owed to Plaintiff.

HerbAsia does not dispute that Scheckenbach and his wife were the sole owners of HerbAsia between October 2001 and July 2003.  (Def.'s App. at 4.)  HerbAsia also does not

challenge that Scheckenbach's knowledge of the relationships between Scheckenbach, Plaintiff, Horizon and HerbAsia is imputed to HerbAsia (by virtue of Scheckenbach's ownership of HerbAsia). HerbAsia avers that it did not have minimum contacts with Texas other than selling raw materials to an intermediary with the knowledge that those goods would be used to manufacture a product shipped to Plaintiff in Texas. HerbAsia argues that the stream of commerce theory is inapplicable to assert personal jurisdiction.

"The stream-of-commerce principle is applied to companies that . . . 'purposefully serve markets broader than the states in which [their] initial or direct sales are made.'" *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 381 (5th Cir. 2002) (quoting *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1987) (en banc)). The Fifth Circuit, in *Nuovo Pignone*, cautioned that it " has been reluctant to extend the stream-of-commerce principle outside the context of products liability cases."[6] *Id.* However, in *Petroleum Helicopters*, the en banc panel "held that jurisdiction may be asserted over a company that manufactures a component part in one state for incorporation into a finished product in a second state and sale to customers in a third state." *Petroleum Helicopters*, 804 F.2d 1370. Although the present action is not a products liability case, application of the stream of commerce theory is consistent with Fifth Circuit precedent. *See Nuovo Pignone*, 310 F.3d at 381; *Gulf Consol. Servs., Inc. v. Corinth Pipe Works*, *F.A.*, 898 F.2d 1071, 1072-74 (5th Cir. 1990).

"Application of the stream-of-commerce principle is warranted here." *Nuovo Pignone*, 310 F.3d at 381. HerbAsia did not contract with Plaintiff, "a citizen of the home forum,

---

[6] Application of the stream of commerce theory is not limited exclusively to products liability cases. *See e.g. Nuovo Pignone*, 310 F.3d at 381; *Gulf Consol. Servs., Inc. v. Corinth Pipe Works*, F.A., 898 F.2d 1071, 1072-74 (5th Cir. 1990).

7

but rather with third party intermediar[y]" Horizon. *Id.* Although the transaction between HerbAsia and Horizon took place in California, "the [D]efendant sold the [raw materials] in anticipation that it would be shipped to Texas" pursuant to Scheckenbach's recommendations to Plaintiff as to the source and types of raw materials. *Gulf Consol. Servs.*, 898 F.2d at 1074. HerbAsia had no doubt as to the purpose of selling raw materials to Horizon: for use in manufacturing of products to be shipped to Plaintiff in Texas. Informed with Scheckenbach's knowledge, HerbAsia should have considered the ramifications of selling to Plaintiff's manufacturer and the possible consequences that its choice might cause in Texas. "In this sense, the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present here." *Nuovo Pignone*, 310 F.3d at 381.

HerbAsia is correct in arguing that under *Asahi* "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 112 (1987). (Def.'s Mot. at 4.) Plaintiff's pleadings and jurisdictional evidence, however, demonstrate that HerbAsia's conduct vis-à-vis Scheckenbach, "may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, . . ., establishing channels for providing regular advice to customers in the forum State." *Asahi Metal*, 480 U.S. at 112. In his position as consultant and advisor to Plaintiff, Scheckenbach, owner of HerbAsia, recommended, *i.e.*, marketed HerbAsia's raw materials for manufacturer and ultimate delivery into Texas, the forum state. *See id.*

In participating in the alleged scheme, HerbAsia was "purposefully availing [itself] of 'the privilege of causing a consequence' in Texas." *Wien Air Alaska*, 195 F.3d at 213. The Court

8

concludes that HerbAsia purposefully directed its raw materials toward the forum State. Accordingly, Plaintiff has made a *prima facie* showing of minimum contacts.

### B.      Fair Play and Substantial justice

Once the plaintiff makes a *prima facie* showing of minimum contacts, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Cent. Freight Lines*, 322 F.3d at 384.  To prevail, the "defendant must make a 'compelling case.'" *Id*. (citing *Burger King*, 471 U.S. at 477).  In determining whether the assertion of jurisdiction is fair and reasonable, the Court engages in a balancing of interests.  *Id*.; *TIG Ins. Co.*, 177 F. Supp. 2d at 567.  The interests the Court considers are: "(1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies."  *Cent. Freight Lines*, 322 F.3d at 384 (citing *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987)).

HerbAsia does not make a "compelling case."  Indeed, none of HerbAsia's filings with respect to its motion(s) to dismiss even mention whether assertion of jurisdiction is fair and reasonable.  Like the defendant in *Petroleum Helicopters*, HerbAsia "deliver[ed] its [raw materials] into the stream of commerce with the expectation that [a Texan] would purchase [the manufactured product.]"  *Id*., 804 F.2d at 1370; *see Cent. Freight Lines*, 322 F.3d at 380 ("the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state.") (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  HerbAsia purposefully availed itself of

9

the benefits of doing business in Texas; consequently, it is not unfair to require HerbAsia to appear in Texas courts. *Petroleum Helicopters*, 804 F.2d at 1370 (internal quotes omitted).  HerbAsia has not met his burden of showing that the assertion of jurisdiction would be unfair.[7]  The exercise of jurisdiction over HerbAsia does not offend traditional notions of fair play and substantial justice.

## IV.   Conclusion

For the foregoing reasons, Defendant HerbAsia's Second Motion to Dismiss is **DENIED**.

SO ORDERED.

DATED: August 2, 2005.

_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

---

[7]  The Supreme Court has stated that "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus.*, 480 U.S. at 114-15.  HerbAsia does not address the interests of: the forum state in the case; the Plaintiff in obtaining relief; the judicial system in efficient resolution of the controversy; or the states in furthering fundamental social policies.  Nor has HerbAsia "identified any conflict between the interests of Texas and other states that would flow from the exercise of personal jurisdiction here." *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 387 (5th Cir. 1989), *cert. denied*, *Jugometal Enter. for Imp. and Exp. of Ores and Metals v. Irving*, 493 U.S. 823 (1989).  Litigating in Texas satisfies the Plaintiff's interest in obtaining convenient and effective relief and provides an efficient resolution of the controversy.