IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

ADVOCARE INTERNATIONAL L.P.,     \*
     \*
     Plaintiff,     \*
v.     \*
     \*
HORIZON LABORATORIES, INC.,     \*
RICHARD PAUL SCHECKENBACH     \*
R-SQUARED NUTRITION, INC., and     \*
HERBASIA CORPORATION,     \*     Civil No. 3:04-CV-1988-H
     \*
     Defendants,     \*
v.     \*
     \*
ROBERT HACKMAN and LEXINGTON     \*
INSURANCE COMPANY,     \*
     \*
     Third-Party Defendants.     \*

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for Summary Judgment on Behalf of Third-Party

Defendant Lexington Insurance Company, and supporting brief and appendix, filed November 3,

2005; Defendant and Third-Party Plaintiff Horizon Laboratories, Inc.'s Response to Motion for

Summary Judgment, and supporting brief and appendix, filed November 18, 2005; Response

[Reply] on Behalf of Lexington to Horizon's Opposition, and supplemental appendix, filed

December 7, 2005; and Supplemental Statement of Uncontested Material Facts on Behalf of

Lexington, filed December 7, 2005.

Also before the Court are Defendant and Third-Party Complainant Horizon's Motion for

Summary Judgment Against Lexington, and supporting brief and appendix, filed November 16,

2005; Opposition of Lexington to Horizon's Motion for Summary Judgment, filed December 7, 2005; and Third Party Plaintiff Horizon's Reply, filed December 20, 2005.

For the reasons that follow, Horizon's motion for summary judgment is denied, and Lexington's motion for summary judgment is granted in its entirety.

## I.  BACKGROUND

Horizon Laboratories, Inc., ["Horizon"] is a California corporation that formerly manufactured nutritional products for Advocate International, Inc. ["Advocare"], the Plaintiff in this case.  Until mid-2002, Horizon's products included a substance called "Ephedra," also known as "Ma Huang."  Beginning in 2003, Advocare and Horizon, among others, were named as defendants in products liability lawsuits alleging injuries from ingestion of Ephedra products.  On September 10, 2004, this diversity case was removed from state court.  A discussion of the parties and claims in the primary lawsuit is unnecessary for disposition of the present motions, which involve only two parties in the third-party action.

On January 11, 2005, Defendant Horizon impleaded Lexington Insurance Company ["Lexington"] as a third-party defendant.  Horizon's sole claim against Lexington is for declaratory judgment that Lexington is contractually obligated to defend and indemnify Horizon against the underlying Ephedra lawsuits.  Both Horizon and Lexington now ask the Court, in cross-motions for summary judgment, to determine whether Lexington is liable to Horizon for the insurance coverage in dispute.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for

the nonmoving party as to any material fact.  FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Innovative Database Systs. v. Morales*, 990 F.2d 217 (5th Cir. 1993).  The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that demonstrate the absence of a genuine issue of material fact, but "is not required to negate elements of the nonmoving party's case."  *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).  If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).  In determining whether genuine issues of fact exist, factual controversies are construed in the light most favorable to the nonmovant, but "only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451 (1992).  In the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts.  *Lynch*, 140 F.3d at 625.  A party must do more than show some "metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With these summary judgment standards in mind, the Court turns to an analysis of Lexington's and Horizon's motions.

## III.  ANALYSIS

A.     Lexington's Motion for Summary Judgment

In the first summary judgment motion under consideration, Third-Party Defendant Lexington Insurance Company ["Lexington"] asks for judgment as a matter of law against Third-Party Plaintiff Horizon Laboratories, Inc. ["Horizon"].  The issue is whether Lexington is contractually obligated to defend and insure Horizon against lawsuits arising from the use of a Horizon-manufactured weight control product called "Thermo-E," which contained the substance Ephedra.

The parties agree that California law applies.[1]  The parties further agree that only one of the four Lexington policies – "Policy A" -- is at issue.  They narrow the field still further by agreeing that Ephedra is the sole substance at issue under the policy.  The question before the Court is thus reduced to the following: Under California law, does Policy A insure Horizon against lawsuits claiming injury caused by Ephedra?  The answer, under the plain language of the policy, is no.

Under California law, the interpretation of a written contract is a matter of law for the Court. *In re James E. O'Connell Co., Inc.*, 799 F.2d 1258, 1260-61 (9th Cir. 1986).  The fundamental goal of contract interpretation is to give effect to the mutual intent of the parties by reference to the

_____

[1]  In this case, the insurance contract was negotiated, entered into, and underwritten in California, and delivered to a California insured.  Because California therefore has the most significant relationship to the contract, California law would apply even in the absence of agreement of the parties.  *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 & n.8 (5th Cir. 2001) (holding that in diversity cases, the law of the forum state governs choice of law); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (adopting Restatement (Second) Conflicts of Law to apply the "most significant relationship" test); *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997) (listing factors to determine choice of law in contract cases).

written provisions therein. *Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 353-54 (Cal. 2003). The Court should consider the contract as a whole and should rely on good common sense in interpreting it. *Golden Eagle Ins. Co. v. Insurance Co. of the West*, 121 Cal Rptr. 2d 682, 685 (Cal. App. 4th Dist. 2002). Insurance policy language should be construed according to its plain, ordinary, and popular meaning. *Producers Daily Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 912 (1986). If the language of an insurance policy is clear and explicit, that language governs interpretation of the policy. *Rosen*, 70 P.3d at 354.

In this case, the contract clause at issue is Endorsement #7 of Policy A. It reads in relevant part as follows:

> WEIGHT MANAGEMENT PHARMACEUTICAL EXCLUSION
>
> In consideration of the premium charged, it is understood and agreed that the following exclusion is added to this policy . . ..:
>
> This insurance does not apply to:
>
> "Bodily injury", "property damage", "personal injury", or "advertising injury", arising out of any pharmaceutical used for the treatment of obesity, weight control and/or weight management, including but not limited to Dexfenfluramine, Phentermine and Ephedra.

Truncated to its essentials, the clause says: "This insurance does not apply to . . . bodily injury . . . arising out of any pharmaceutical used for . . . weight management, including . . . Ephedra." (quotes omitted). Under the plain language of Endorsement #7,[2] Ephedra in not covered by the policy.

---

[2] Because the relevant clause of Policy A is not ambiguous, the parties' parol evidence has not been considered. *See Conestoga Servs. Corp. v. Executive Risk Indemnity, Inc.*, 312 F.3d 976, 982-83 (9th Cir. 2002) (defining an ambiguous clause under California law as one capable of two reasonable constructions); *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002) (allowing parol evidence to be considered only when construing an ambiguous contract).

Horizon argues in opposition that Ephedra is not a pharmaceutical, but rather is an herb and thus a food substance. Because Endorsement #7 refers to "any pharmaceutical" and does not mention herbs or food substances, Horizon maintains that Endorsement #7 therefore does not apply to foreclose coverage in this case. Horizon further asks the Court to assign a meaning to the word "pharmaceutical" that excludes the nutritional weight control product it manufactured.

Despite Horizon's insistence, however, the Court is not required to decide whether Ephedra is a food or a drug, or whether the distinction is relevant for purposes of this lawsuit. Ephedra is expressly named in the endorsement. Referring to Ephedra as a "pharmaceutical" does not alter its identity. The endorsement language does not imply that it encompasses Ephedra only if it is a pharmaceutical. No possible confusion exists over which Ephedra the endorsement names.

It is true that under California law, the scope of insurance coverage is to be construed broadly, and exclusionary clauses are to be construed narrowly. *See Harris v. Gulf Ins. Co.*, 297 F. Supp. 2d 1220, 1224 (N.D. Cal. 2003). The Court can conceive of hypothetical circumstances under which Horizon's argument might have merit. If, for example, the language of the policy referred only to "any pharmaceutical used for . . . weight control," without naming Ephedra, the definition of "pharmaceutical" would be at issue. Similarly, if the language was "any pharmaceutical *containing* Ephedra," the Court might arguably pursue the tortuous analysis Horizon proposes. Here, however, common sense and plain language dictate one conclusion only. Regardless whether Lexington correctly or mistakenly (or presciently) referred to Ephedra as a pharmaceutical, and regardless whether the ordinary definition of "pharmaceutical" should or should not include nutritional supplements, Ephedra is an expressly named exclusion from Policy A.

Because Endorsement #7 relieves Lexington of any obligation to defend or indemnify Horizon for the underlying lawsuits, Horizon has no claim against Lexington in this matter. Lexington's motion for summary judgment is therefore granted.

B.      Horizon's Motion for Summary Judgment

In the cross-motion for summary judgment, Horizon seeks a ruling in its favor on the same issue decided above. Because the Court has held for Lexington as a matter of law, Horizon's motion is denied.

## IV.  CONCLUSION

For the reasons given herein, the motion for summary judgment filed by Horizon Laboratories, Inc., is **DENIED**. Lexington Insurance Company's motion for summary judgment is **GRANTED**. Horizon's cause of action against Lexington is **DISMISSED WITH PREJUDICE**. Final Judgment will issue by separate order.

SO ORDERED.

DATED: January 13, 2006.


_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

7