IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADVOCARE INTERNATIONAL L.P., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| HORIZON LABORATORIES, INC., | * | |
| RICHARD PAUL SCHECKENBACH, | * | |
| R-SQUARED NUTRITION, INC., and | * | |
| HERBASIA CORPORATION, | * | Civil No. 3:04-CV-1988-H |
| | * | |
| Defendants, | * | |
| v. | * | |
| | * | |
| ROBERT HACKMAN, | * | |
| | * | |
| Third-Party Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Advocare International L.P.'s Motion for Partial Summary Judgment, and supporting brief and appendix, filed October 31, 2005; Defendant Horizon Laboratories, Inc.'s Response to Motion for Partial Summary Judgment, filed November 17, 2005; and Plaintiff Advocare's Reply, and supplemental appendix, filed December 5, 2006.

Also before the Court are Plaintiff Advocare International's Objections and Motion to Strike Summary Judgment Evidence, filed December 5, 2005; Defendant Horizon Laboratories, Inc.'s Response, and supporting appendix, filed December 23, 2005; and Plaintiff Advocare's Reply, filed January 3, 2006.

Also before the Court is Plaintiff Advocare's Motion to Exclude Defendant Horizon's Evidence of Damages, and supporting brief, filed February 3, 2006.

For the reasons that follow, Plaintiff's motion for partial summary judgment is granted in part, and denied in part. Plaintiff's motion to strike summary judgment evidence is denied. Plaintiff's motion to exclude evidence is rendered moot by the holding in this opinion.

## I. BACKGROUND

Plaintiff Advocare International L.P. ["Advocare"] sells nutritional supplements and weight management products. From 1994 through 2004, Defendant Horizon Laboratories, Inc. ["Horizon"] manufactured certain products for Advocare, including a weight management supplement containing ephedra. This lawsuit arises from the contractual relationship between Advocare and Horizon, and from their relative liability for losses incurred because of consumer lawsuits based on alleged injury from ingestion of ephedra.

Advocare's claims against Horizon include breach of contract, fraud, civil conspiracy, usury, and indemnity. Horizon's claims against Advocare include breach of contract and fraud. Plaintiff Advocare now moves for partial summary judgment on three of the claims at issue.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Innovative Database Systs. v. Morales*, 990 F.2d 217 (5th Cir. 1993). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that demonstrate the absence of a genuine issue of material fact, but "is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc.*

v. *Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant does meet its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998). In determining whether genuine issues of fact exist, factual controversies are construed in the light most favorable to the nonmovant, but "only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451 (1992). In the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts. *Lynch*, 140 F.3d at 625. A party must do more than show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With these summary judgment standards in mind, the Court turns to an analysis of Advocare's motions.

### III. ANALYSIS

Advocare has asked the Court for judgment as a matter of law on the following causes of action: (1) Advocare's breach of contract claim against Defendant Horizon for failure to maintain adequate insurance coverage; (2) Horizon's breach of contract counterclaim against Advocare for

3

failure to satisfy a monthly purchase commitment; and (3) Horizon's fraud counterclaim against Advocare. Each of the three issues is addressed in turn.

  A. <u>Breach of Contract (Insurance Coverage)</u>

During the course of the business relationship between Advocare and Horizon, the parties entered into two written contracts: (1) the Manufacturing Standards and Confidentiality Agreement dated April 11, 1997 ["1997 Agreement"]; and (2) the Manufacturing Standards and Confidentiality Agreement dated October 14, 2002 ["2002 Agreement"]. Advocare alleges that both contracts contained provisions requiring Horizon to maintain adequate product liability insurance coverage for the products it manufactured for Advocare. Because of the subsequent ephedra lawsuits for which Advocare was uninsured, Advocare claims damages against Horizon for breach of the two promises to obtain coverage. The Court addresses each contract separately.

  1. **1997 Agreement**

Advocare moves for judgment as a matter of law that Horizon breached the parties' 1997 Agreement. The elements of a claim for breach of contract under Texas law are (1) the existence of a valid contract; (2) compliance with its terms by the claimant; (3) breach of the contract by the non-claimant; and (4) damages to the claimant as a result of the breach. *W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. 1043, 1052 (S.D. Tex. 1996), *aff'd*, 127 F.3d 34 (5th Cir. 1997); *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 235 (Tex. App.-San Antonio 2001, no writ); *Landrum v. Devenport*, 616 S.W.2d 359, 361 (Tex. App.-Texarkana 1981, no writ).

For the 1997 Agreement, it is undisputed that the first two prongs are met. The fourth, however, is not. The Court is unable from the summary judgment materials submitted by Advocare

4

to determine whether any of Advocare's alleged damages of approximately $2.5 million are attributable to breach of the 1997 Agreement. Accordingly, Advocare has not met its burden of establishing a *prima facie* case for breach of contract. Summary judgment on Advocare's cause of action for breach of contract must therefore be denied on that basis.

In the interest of streamlining trial of this matter, the Court proceeds to address the third element of the cause of action, breach of the contract's terms by Horizon. Under Texas law,[1] contract interpretation is a question for the court unless the contract is susceptible of two or more reasonable interpretations. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The court's primary goal is to ascertain the true intent of the parties from the four corners of the agreement. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 131 (Tex. App. -- Houston [14th Dist.] 2000, writ dism'd).

In this case, the 1997 Agreement reads in relevant part:

> Liability Insurance. Manufacturer shall maintain in place at all times insurance coverage for product liability in adequate amounts. Further, Manufacturer shall obtain an endorsement to such policy of product liability insurance, which endorsement names AdvoCare as an additional insured. Manufacturer shall provide to AdvoCare the original of said policy endorsement.

Plf.'s App. at 11 (1997 Agreement, ¶ 7).

The "manufacturer" in both contracts is Defendant Horizon. *See id*. at 10. The plain language of this contract requires Horizon to buy product liability insurance in "adequate amounts." No product covered by the agreement is expressly excluded from the requirement of insurance coverage. The only reasonable construction of this paragraph, therefore, is that the coverage was

---

[1] Although the 1997 Agreement has no choice of law provision, the 2002 Agreement specifies that Texas law applies to the contract's interpretation. *See* Plf.'s App. at 16 (2002 Agreement, ¶ 19). Horizon has not contested the application of Texas law to both contracts.

5

intended by the parties to apply to all the products Horizon contractually agreed to manufacture. It is undisputed that Horizon manufactured the ephedra product for Advocare under both the 1997 and 2002 Agreements. Accordingly, for the duration of the time the Agreements were in effect, Horizon was required to buy and maintain product liability insurance for the ephedra product.

This Horizon failed to do. Under three of the four insurance policies Horizon bought from Lexington Insurance Company during the relevant time period, it is undisputed that ephedra was excluded from coverage. *See Advocare Int'l, L.P. v. Horizon Labs., Inc.*, Civ. No. 3:04-CV-1988-H (N.D. Tex. January 13, 2006). Under the fourth policy, whose terms the parties disputed in this lawsuit, the Court has found as a matter of law that the policy's plain language excluded ephedra from coverage. *See Advocare*, order at 2-4. The exclusion is so plain, moreover, that Horizon could have no objectively reasonable belief that it had complied with the terms of its Agreement with Advocare. *See id*.

In opposition to a finding of breach of contract, Horizon first argues that the terms "product liability" and "adequate amounts" are vague and create a fact issue concerning the agreed scope of insurance. With respect to the term "product liability," that argument is specious. With regard to the term "adequate amounts," the point is moot. Horizon provided no product liability insurance for ephedra products whatsoever. By any construction, zero would never be an "adequate amount."

Second, Horizon argues that Advocare waived objection by failing to investigate whether the insurance Horizon provided did or did not cover ephedra. Horizon provided Advocare with certificates of insurance confirming the existence of insurance policies, but the certificates did not include notice of the endorsement excluding ephedra. Horizon cites no authority for the concept that

an aggrieved party has the burden to police compliance with a contract before claiming breach, and the Court can conceive of none.

Finally, Horizon argues impossibility of performance. It produces no summary judgment evidence, however, that obtaining product liability insurance for ephedra was impossible. Indeed, the policy terms specify that ephedra was excluded from coverage in consideration for the premium charged. *See id.* The only competent evidence before the Court thus shows that ephedra coverage was not impossible, merely expensive.

Under these circumstances, the Court holds that Horizon breached the 1997 Agreement's term requiring maintenance of product liability insurance in adequate amounts. On this limited issue Advocare's motion is granted, and the Court will so instruct the jury at trial.

2.      **2002 Agreement**

The same analysis that applies to Horizon's alleged breach of the 1997 Agreement applies to Horizon's breach of the 2002 Agreement. Horizon did not provide Advocare the insurance coverage it agreed to provide under the 2002 Agreement; and the Court will so instruct the jury. From the materials before the Court, however, it is impossible to say as a matter of law whether any of the alleged damages are traceable to breach of the 2002 Agreement, or instead to breach of the 1997 agreement, or alternatively to both. *See W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. at 1052 (requiring damages traceable to the breach as an element of a *prima facie* case of breach of contract under Texas law). Accordingly, Advocare's motion for summary judgment cannot be granted on this claim.

B.    Breach of Contract (Minimum Purchase)

In the second of Advocare's grounds for summary judgment, Advocare asks the Court to dismiss Horizon's counterclaim for Advocare's alleged breach of the 2002 Agreement. Horizon claims that Advocare failed to satisfy a minimum Monthly Purchase Commitment from August 2004 until expiration of the contract. In response, Advocare argues first that it terminated the contract in August 2003, more than a year before its alleged breach. Second, Advocare argues that because Horizon was itself in breach of the agreement, it cannot bring a claim for breach under Texas law. The Court agrees on both counts.

Under the 2002 Agreement, it is undisputed that either Advocare or Horizon had the right to terminate further performance upon the agreement's breach by the other party. Plf.'s App. at 16 (2002 Agreement ¶ 16). Advocare submits uncontradicted evidence that in compliance with the agreement's notice provision, Advocare sent written notice of termination and allowed the mandatory ten days for Horizon to "cure" the problem. The question is whether the termination was validly grounded in an actual breach of the agreement by Horizon. If so, the breach supports Advocare's termination of the 2002 Agreement; and it also independently precludes Horizon's suit for Advocare's subsequent failure to comply with the agreement's provisions. *See W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. at 1052.

The 2002 Agreement reads in relevant part:

> USP Compliance. [Horizon] agrees to participate in and fully comply with the Dietary Supplement Verification Program ("DSVP") established by U.S. Pharmacopeia ("USP"). [Horizon] further agrees to undertake such actions as necessary to obtain the DSVP certification mark for the Products within 180 days from the Effective Date of this Agreement.

Plf.'s App. at 14 (2002 Agreement ¶ 3).

Under the terms of the agreement, then, Horizon agreed to obtain DSVP certification for the designated products. Horizon concedes that it never accomplished DSVP certification for any of Advocare's products. It argues instead that the contractual phrase is ambiguous.

A contract is ambiguous when its meaning is uncertain and doubtful, or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is ambiguous is a question of law for the court to decide. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). This determination is made by reviewing the contract as a whole in light of the circumstances existing when the contract was executed. *Friendswood Dev. Co.*, 926 S.W.2d at 282; *National Union Fire Ins. Co.*, 907 S.W.2d at 520. If a contract is worded in such a manner that it can be given a definite or certain meaning, it is not ambiguous. *Friendswood Dev. Co.*, 926 S.W.2d at 282; *National Union Fire Ins. Co.*, 907 S.W.2d at 520.

In this case, Horizon argues that the word "undertake" means "to set about," "to attempt," or "to commit to a course of action." Horizon argues that all the contract required it to do was to begin within 180 days the process of obtaining DSVP certification. The Court disagrees. The real question is whether the phrase "within 180 days" is a deadline for initiating the required steps or is, in contrast, a deadline for obtaining the certification. If the former, the phrase "within 180 days" is placed awkwardly, ungrammatically, and implausibly far afield from the conduct to which it refers. If the latter, the sentence reads normally, makes good grammatical sense, and is susceptible of clear meaning.[2] Accordingly, the Court finds the phrase not to be ambiguous as written: Horizon agreed

---

[2] The Court would normally entertain a presumption in this analysis against the drafter of the agreement, which Horizon claims to have been Advocare. *See Republic Nat'l Bank of Dallas v. Northwest Nat.*, 758 S.W.2d 109, 115 (Tex. 1978). However, in this case the 2002 Agreement contains express provision that "[n]o party to this Agreement shall be considered the 'drafter' of

to undertake whatever actions were necessary to accomplish DSVP certification by April 2003, 180 days after the contract commenced.

In opposition to this reading, Horizon submits parol evidence that DSVP certification is impossible to achieve within 180 days and indeed can take years to accomplish. As a result, Horizon argues, it would never have agreed to obtain it within that short time frame. Whether this allegation is correct, or more to the point, whether Horizon knew the problem existed at the time it signed the agreement, is not for the Court to decide. Absent ambiguity, parol evidence is not admissible on the issue of contract interpretation or breach. *Coker*, 650 S.W.2d at 393; *see Heritage Resources, Inc.*, 939 S.W.2d at 121 (requiring a court to determine the parties' intent from the four corners of the agreement). To the extent Horizon needed to modify the 2002 Agreement to reflect its actual progress on the DSVP issue, such modification was required by the contract terms to be in writing. *See* Plf.'s App at 16 (2002 Agreement ¶ 14). By the unambiguous terms of the contract, Horizon was in breach 180 days after the effective date. Based on that breach, Advocare terminated the contract approximately four months later, in August 2003. Accordingly, Horizon's claim of breach beginning in August 2004 must fail for lack of a valid agreement in existence between the parties.

As a second ground for granting summary judgment on Horizon's claim, the Court notes that Horizon's breach for failure to obtain DSVP certification in the required time period independently precludes Horizon from asserting a subsequent breach of that contract by Advocare. *See W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. at 1052 (finding under Texas law a *prima facie* requirement that a claimant for breach of contract not have been in prior breach). Advocare's motion

---

this Agreement for purposes of construction of this Agreement." Plf.'s App. at 16 (2002 Agreement ¶ 18).

for summary judgment on Horizon's counterclaim for breach of the 2002 Agreement's Monthly Purchase Commitment is granted.

### C. Fraud

Advocare next asks for summary judgment on Horizon's counterclaim of fraud. Horizon has pleaded that Advocare did not intend to abide by the 2002 Agreement at the time the terms of the contract were agreed. Advocare's first argument is that Horizon failed to plead fraud with particularity. *See* FED. R. CIV. P. 9(b). The court finds, to the contrary, that Horizon has met the bare bones of the requirement. *See* Def.'s Second Amended Answer and Counterclaim ¶¶ 42, 43, 50 (setting out the time, place, circumstances, and content of the alleged fraud, along with Horizon's reliance and damages).

Advocare argues next that Horizon's fraud claim is simply a claim for breach of contract, and as such is not independently supportable. As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. *See International Printing Pressmen & Assistants Union of N. Am. v. Smith*, 198 S.W.2d 729, 735-36 (Tex. 1946). When one party enters into a contract with no intention of performing, however, that misrepresentation may give rise to an action in fraud. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971); *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 155 (Tex. App.--Texarkana 1988, writ denied). Accordingly, Horizon has stated a claim on this issue.

To survive summary judgment, Horizon must do more than merely state a claim; it must submit competent summary judgment evidence. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Edwards*, 148 F.3d at 431. Instead, Horizon offers only bald allegations of fraudulent intent. *See Farris Aff.* In the absence of a supporting inference arising from Advocare's early termination of

the contract, for which the Court has found nothing improper, Horizon has failed to meet its summary judgment burden. *See Securities and Exchange Comm'n v. Recile*, 10 F.3d 1093, 1097-98 & n.15 (5th Cir.1994) (holding that bald allegations of fraudulent intent are insufficient to create a genuine issue of material fact); *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992) (same). Because no genuine issue of material fact exists for this claim, it is dismissed.

### IV. CONCLUSION

For the reasons given above, Advocare's motion for summary judgment is **GRANTED IN PART and DENIED IN PART**. The Court will instruct the jury that Horizon did not provide insurance coverage required by both the 1997 and 2002 Agreements. Summary Judgment on Advocare's claim of breach of contract with respect to failure to provide insurance coverage is otherwise **DENIED**. As to Horizon's counterclaims against Advocare, summary judgment is **GRANTED** in Advocare's favor for Horizon's claim of breach of the 2002 Agreement's Monthly Purchase Commitment, and for Horizon's claim of fraud.

Advocare's motion to strike summary judgment evidence is **DENIED**. Because the Court has granted summary judgment on Horizon's counterclaims for which Horizon asserts damages of lost profits, Advocare's recently filed motion to exclude evidence of damages for those claims is **DENIED AS MOOT**.

The Court does not by this Order decide the merits of the stated account for which Horizon seeks recovery in the amount of approximately $3.4 million.

SO ORDERED.

DATED: February 6, 2006.

_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS